IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**KAREN WATKINS**, )
)
    Plaintiff, )
)
v. ) 2:16cv01850
) **Electronic Filing**
**BLIND AND VISION REHABILITATION** )
**SERVICES OF PITTSBURGH,** )
)
    Defendant. )

## OPINION

Karen Watkins ("plaintiff") commenced this employment action against the Blind and Vision Rehabilitation Services of Pittsburgh ("defendant" or "BVRS") asserting that it interfered with her rights under the Family and Medical Leave Act ("FMLA"). Presently before the court is defendant's motion for summary judgement. For the reason set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof

on the claim, the movant=s initial burden may be met by demonstrating the lack of record evidence to support the opponent=s claim. <u>Nat'l State Bank v. Fed. Reserve Bank of New York</u>, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Electric Industrial Corp. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986) (<u>quoting</u> Fed. R. Civ. P. 56(E)) (emphasis in <u>Matsushita</u>). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." <u>Harter v. GAF Corp.</u>, 967 F.2d 846, 852 (3d Cir. 1992); <u>Sec. & Exch. Comm'n v. Bonastia</u>, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted. <u>Anderson</u>, 477 U.S. at 249-50; <u>see</u> <u>also</u> <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or

competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. On June 14, 2014, plaintiff was hired by BVRS as an employment specialist. Two days later she attended an employee orientation where she reviewed a copy of the Employee Handbook. The Employee Handbook contained numerous policies and procedures that related to plaintiff's employment. The FMLA policy was included among these. Attached were defendant's FMLA Application and forms titled "Employee Rights and Responsibilities Under the Family and Medical Leave Act" and "Notice of Eligibility and Rights and Responsibilities." Plaintiff signed an Acknowledgment of Receipt of the Employee Handbook.

As an employee specialist plaintiff reported to Diane Celidonia, the ESS Supervisor at BVRS. Celidonia reported to Barbara Peterson, the director of client services at BVRS. Peterson reported to Erika Petach, the President of BVRS.

On July 1, 2015, Plaintiff was driving through Wilkinsburg, Pennsylvania, at around 10:00 p.m., when an unknown individual fired multiple bullets at her car. Plaintiff's tires were shot, her window was shattered, and a bullet lodged itself into the driver's side headrest, barely missing her. Plaintiff is a military veteran who served in the Marine Corps and suffers from Post-Traumatic Stress Disorder ("PTSD"). The shooting on July 1, 2015, triggered her PTSD symptoms. After the shooting plaintiff struggled to function in her daily life and was afraid to leave her home. She experienced irritability, anxiety, fear, stress, avoidance, and lack of concentration at work.

In early June 2016, it was brought to the attention of Celidonia and Peterson that plaintiff assertedly was submitting inaccurate client information for financial reimbursement of services rendered. Defendant maintains that Celidonia and Peterson met with plaintiff to

3

discuss this issue on June 22, 2016. During the meeting plaintiff was instructed to provide certain documentation by the end of the day. A notice of unsatisfactory work performance was issued and a follow-up meeting was scheduled for June 24, 2016.

Defendant contends that plaintiff failed to provide the documentation as instructed. Celidonia and Peterson met on the June 24, 2016 to discuss the matter. Another notice of unsatisfactory work performance was issued after the meeting and plaintiff was instructed to report to work on June 27, 2016 to catch up on paperwork.

Both notices of unsatisfactory work performance were signed only by Celidonia. The employee signature line where plaintiff should have signed was blank. Plaintiff does not recall seeing either of these documents nor she does recall the meetings.

On June 26, 2016, Celidonia sent an email to plaintiff reminding her that she needed to be at work on Monday June 27 and Tuesday June 28, 2016, to organize binders and bills. As part of this, Celidonia forwarded an email from Andrew Rossi, a Vocational Rehabilitation Counselor, who requested to work with a different agency. Celidonia expressed concern that this was the third request that month from an individual who did not want to work with plaintiff.

By Friday July 1, 2016, plaintiff still had not completed the backlogged paperwork. As a result Celidonia sent an email directing plaintiff to report to work at 8:00 a.m. on July 5, 2016. Celidonia sent an additional email on July 3, 2016 reminding plaintiff that she needed to be at work on July 5th. Plaintiff did not report to work as directed. Celidonia sent emails that morning to plaintiff at 8:10 a.m., 8:41 a.m., and 9:02 a.m. At 9:22 a.m. plaintiff responded and informed Celidonia that plaintiff was having a mental health emergency. Plaintiff stated that she was being treated by Dr. Shannon Coleman, provided the telephone number for Dr.

Coleman, and advised that she would forward the appropriate documentation to Celidonia and HR.

The following day a letter was sent to BVRS from Dr. Coleman stating that plaintiff was being treated for PTSD symptoms and she would be able to return to work without restrictions on July 7, 2016. The letter included a list of accommodations that would benefit plaintiff at work.[1]

Plaintiff has been receiving treatment from Dr. Coleman for around seven years. Originally she saw Dr. Coleman once a week but after she began a course of medication she only saw Dr. Coleman as needed. Plaintiff could not remember if she visited Dr. Coleman the day she was having a mental health emergency on July 5th or if she just called her.

Plaintiff also has another doctor in addition to Dr. Coleman and goes to a walk-in clinic. She could not recall the doctor's name or how often she goes to the clinic.

The parties dispute whether plaintiff received appropriate FMLA paperwork. After plaintiff's July 5th email indicating she was having a mental health emergency, Tara Zimmerman, director of operations at BVRS, attests that she prepared a packet that contained defendant's FMLA policy and application and mailed it to plaintiff. Plaintiff denies ever receiving it.

Plaintiff missed work on Thursday July 7th and Friday July 8th without calling off. She also missed work on Monday July 11th but did call Celidonia to ask where she needed to report for work on the following day, as BVRS recently had relocated to a new building.

---

[1] The parties dispute whether BVRS knew about plaintiff's PTSD prior to Dr. Coleman's letter. BVRS claims that it had no knowledge of plaintiff's PTSD until it received Dr. Coleman's letter. Plaintiff maintains that she informed Peterson in May 2016 of the problems she was experiencing and requested to set up meetings to assist her at work. She also claims that they discussed this in emails. No emails have been offered to support this assertion.

Celidonia instructed plaintiff to report to the new building at 8:00 a.m. On Tuesday July 12, plaintiff did report for work, but did not arrive until midday.

Plaintiff missed work again on Tuesday July 13th without notifying BVRS. On the following day, July 14th plaintiff missed work, but emailed Celidonia. The following is the email exchange that took place:

> **Plaintiff, subject line Work, 8:14 a.m.:** "I am not feeling well. I will be working from home today."
>
> **Celidonia, subject line Work Schedule, 12:44 p.m.:** "I am sorry to hear you are not feeling well. The work priority for you right now is organizing files, completing necessary program documentation and being in the office. I had requested you to leave information regarding the progress you made in program documentation since I had to leave on Tuesday. I did not receive it in email, written note or voice mail. Lack of needed documentation is delaying OVR billing and OID billing. Hope you are feeling better tomorrow and will be able to report to the office at 8:00 a.m."
>
> **Celidonia, subject line Sick Day, 12:55 p.m.:** "Please enter PTO day in paycom since you indicated you are not feeling well."

On Friday July 15, 2016, plaintiff missed work again without notifying BVRS. She then missed work on July 18, 19, 20, 21, and 22. As a result of these absences Celidonia, Peterson, and Arbogast determined that plaintiff had abandoned her position based on BVRS's attendance policy. On July 22, 2016, plaintiff was terminated.

Defendant moves for summary judgment on the ground that plaintiff has failed to establish three of the elements for a prima facie case of interference under the FMLA. First, plaintiff purportedly failed to show that she was entitled to FMLA leave. Second, plaintiff

failed to give notice to BVRS of her intention to take FMLA leave. Finally, defendant asserts that plaintiff was not denied benefits to which she was entitled under the FMLA.

Plaintiff contends she does have sufficient evidence to establish a prima facie case of interference under the FMLA. She maintains she was entitled to leave under the FMLA and she did give notice to BVRS of her intention to take it. Finally, she asserts she was denied benefits under the FMLA.

In 1993, Congress passed the FMLA to help employees "balance the demands of the workplace with the needs of families" and allow them to "take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) and (2). Under the FMLA an eligible employee is "entitled to 12 workweeks of leave during any 12–month period due to an employee's own serious health condition." Ross v. Gihuly, 755 F.3d 185, 191 (3d Cir. 2014) (citing 29 U.S.C. § 2612(a)(1)). Once the twelve week leave period has expired the employee then has the "right to be restored to his or her original position or its equivalent." Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318 (3d Cir. 2014) (citing Id. § 2614(a)(1)).

An employee's interests are protected by two provisions in the FMLA. Hayduk v. City of Johnstown, 386 Fed. Appx. 55, 59 (3d Cir. 2010). One provision makes it "'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful.'" Id. (quoting 29 U.S.C. § 2615(a)(2)). This is known as the retaliation provision. Hayduk, 386 Fed. Appx. at 59. The second makes it "'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under' the FMLA." Id. (quoting 29 U.S.C. § 2615(a)(1)). This is known as the interference provision. Hayduk, 386 Fed. Appx. at 59.

7

Here, plaintiff is asserting defendant interfered with her rights under the FMLA. To succeed on an interference claim a plaintiff must show:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing Johnson v. Cmty. Coll. Of Allegheny Cnty., 566 F. Supp.2d 405, 446 (W.D. Pa. 2008)). That is, "the employee needs to show that he was entitled to FMLA benefits and that the employer denied them." Foye v. SEPTA, 2017 WL 1150259 (E.D. Pa. March 28, 2017).

A claim of interference differs from a retaliation claim as it is not about discrimination. Capps v. Mondelez Global, LLC, 847 F.3d 144, 155 (3d Cir. 2017). Therefore, an employer cannot defeat the claim by showing that there was a legitimate business reason for its decision. Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006). Interference claims deal only with "'whether the employer provided the employee with the entitlements guaranteed by the FMLA.'" Id. (quoting Callison v. City of Phila., 430 F.3d 117, 120 (3d Cir. 2005)). For this reason, it is not necessary to do a McDonnell Douglas burden-shifting analysis. Id. (quoting Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006)).

Defendant does not contest the first two elements: 1) that plaintiff was an eligible employee under the FMLA and 2) that BVRS was an employer subject to the FMLA's requirements. The final three elements are disputed.

Plaintiff has failed to present sufficient evidence to show that she was entitled to FMLA leave. An employee is entitled to FMLA leave if she suffers from "a serious health condition" which "makes the employee unable to perform the functions of the position." 29 U.S.C.A. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or

physical or mental condition" which involves either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C.A. § 2611(11).

"Inpatient care" is defined as "an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity" or "any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114. There is no indication that plaintiff was incapacitated or had an overnight stay in any type of medical facility. Therefore, in order for plaintiff to have been eligible for leave she must have sufficient evidence to support a finding that she was receiving continuing treatment.

To show continuing treatment a plaintiff must present evidence that shows she suffered from a chronic condition. A chronic condition is defined as one that

> (1) [r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c).

Here, plaintiff lacks sufficient evidence to satisfy the requirements of a chronic condition. While it could be found that PTSD is a condition that can continue over an extended period of time and may cause episodic rather than a continuing period of incapacity, plaintiff has not offered any evidence to support a finding that she made periodic visits to a health care provider.

The statute defines periodic visits as at least twice a year. While plaintiff testified that Dr. Coleman has been her doctor for about seven years, there is no indication that she still visits her on a regular basis, if at all. Plaintiff stated that when she first started treatment she saw Dr. Coleman once a week. During the time in question, however, plaintiff admitted that she only saw Dr. Coleman when she felt it was necessary. Plaintiff could not even recall whether she

physically went to see Dr. Coleman or just called on July 5th, the day of her mental health emergency. She also stated that she goes to walk-in clinics but could not provide any insight about how often she does so, if at all. Finally, plaintiff stated that she does have another doctor, whose name she could not recall, but once again failed to specify how often she has seen this other doctor. It follows that there is insufficient evidence to show plaintiff visited a health care provider twice a year for treatment. Consequently, plaintiff has failed to show she was entitled to FMLA leave.[2]

For the reason set forth above, defendant's motion for summary judgment must be granted. An appropriate order will follow.

Date: September 19, 2018

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc: Martell Harris, Esquire
Christi Wallace, Esquire
Danielle M. Parks, Esquire
Terri Imbarlina Patak, Esquire

(*Via CM/ECF Electronic Mail*)

---

[2] Because plaintiff has failed to provide sufficient evidence to show that she was entitled to FMLA leave, the court need not examine the sufficiency of her evidence with regard to the remaining two elements.